United States District Court
Middle District of Florida
Jacksonville Division

**LEONARDO SIMPKINS,**

 *Plaintiff,*

v.              NO. 3:17-CV-148-J-34PDB

**DIAN ANDREWS ET AL.,**

 *Defendants.*

___

## Report & Recommendation

 Leonardo Simpkins, a prisoner proceeding pro se, has filed a 53-page complaint containing a diary-like description of alleged harms he has suffered in prison from 2012 to 2017. Doc. 1. He names 75 defendants, all of whom are affiliated with the correctional institutions in which he has been confined, and alleges they used excessive force against him, poisoned his meals, and did other things to harm him because they are jealous or angry that his brother is a professional football player. *See* Doc. 1. He requests appointment of counsel, permission to proceed in forma pauperis ("IFP"), and leave to amend his complaint to add more, including more facts, more defendants, and more claims. Docs. 2, 3, 5, 6.

### I. Background

 In 2009, Simpkins was sentenced to more than 20 years in prison for robbery with possession of a gun or deadly weapon and other offenses. *See Corrections Offender Network*, FLA. DEPT. OF CORR., http://www.dc.state.fl.us/offendersearch/ (search for "Leonardo Simpkins").

 In 2012, in this Court, Simpkins filed a petition for a writ of habeas corpus. *Simpkins*, No. 5:12-cv-117, Doc. 1. This Court denied the petition because it was

untimely, he had not alleged extraordinary circumstances to justify equitable tolling, and he had not exhausted his state-court remedies. *Simpkins*, No. 5:12-cv-117-Oc-10PRL, Doc. 20.

This is not Simpkins's first attempt to sue those connected with his incarceration—he has filed four other complaints in this Court containing allegations like those asserted here. *See Simpkins v. Sec'y, Fla. Dept. of Corr.*, No. 3:14-cv-459-J-34PDB (M.D. Fla. Apr. 21, 2014); *Simpkins v. Donald*, No. 3:14-cv-1470-J-32MCR (M.D. Fla. Dec. 9, 2014); *Simpkins v. Florida*, No. 3:15-cv-1534-J-34JRK (M.D. Fla. Dec. 29, 2015); *Simpkins v. Brown*, No. 3:17-cv-7-J-34JRK (M.D. Fla. Jan. 4, 2017).

The first was an 11-page, handwritten document with seven exhibits. *See Simpkins*, No. 3:14-cv-459-J-34PDB, Doc. 1. Simpkins alleged prison officials beat him, poisoned his meals, and were indifferent to his medical needs because his brother is a professional football player. *Simpkins*, No. 3:14-cv-459-J-34PDB, Doc. 1. The Court described deficiencies, including that he had not provided facts describing how any defendant violated his rights or placed him in danger, correctional institutions are not liable under 42 U.S.C. § 1983, the Court cannot direct the FBI to investigate his assertions, and the Court cannot file charges against or reprimand the defendants. *See Simpkins*, No. 3:14-cv-459-J-34PDB, Doc. 2 at 4–5. The Court dismissed the case without prejudice and directed the Clerk of Court to send him forms necessary to refile his case. *Simpkins*, No. 3:14-cv-459-J-34PDB, Doc. 2.

The second, filed shortly after, was a 16-page complaint on a civil-rights complaint form. *See Simpkins*, No. 3:14-cv-1470-J-32MCR, Doc. 1. Simpkins alleged prison officials tried to murder him by poisoning his meals, engaged in racketeering, assaulted him, committed medical malpractice, falsified documents, and tampered with witnesses. *Simpkins*, No. 3:14-cv-1470-J-32MCR, Doc. 1. The Court again described deficiencies, including the need for more than conclusory or vague allegations, the need to state the full name of each defendant, the need to state which right was violated, the need to assert unrelated claims in separate complaints, the

need to comply with pleading standards, and the need to sign and date the complaint. *Simpkins*, No. 3:14-cv-1470-J-32MCR, Doc. 7. It directed him to file an amended complaint on the appropriate form and, when he did not, dismissed the case without prejudice. *Simpkins*, No. 3:14-cv-1470-J-32MCR, Docs. 7, 11.

The third was a four-page document filed as a complaint but titled, "Plaintiff's First Request for Production of Documents." *See Simpkins*, No. 3:15-cv-1534-J-34JRK, Doc. 1. Simpkins requested production of his records and officers' time sheets and described blackmailing of witnesses, contamination of his food, and resentment of his brother. *Simpkins*, No. 3:15-cv-1534-J-34JRK, Doc. 1. The Court explained he had not used the required form or provided the required information, it could not direct an investigation of his allegations, and he could seek relief through the prison's grievance procedures. *Simpkins*, No. 3:15-cv-1534-J-34JRK, Doc. 3. It dismissed the case without prejudice to filing a complaint on the proper form. *Simpkins*, No. 3:15-cv-1534-J-34JRK, Doc. 3.

The fourth, filed a month before this case, was a nine-page complaint on a civil-rights complaint form. *See Simpkins*, No. 3:17-cv-7-J-34JRK, Doc. 1. Simpkins alleged prison officials served him poisoned or contaminated meals, used excessive force against him, and psychologically tortured him because his brother is a professional football player. *Simpkins*, No. 3:17-cv-7-J-34JRK, Doc. 1. The Court explained he had not alleged sufficient facts to show his Eighth Amendment rights were violated, he could seek relief through the prison's grievance procedures, he had not alleged facts to support supervisory liability, allegations of verbal abuse or insulting gestures do not constitute constitutional violations, and some of his assertions were baseless and described "fantastic or delusional scenarios." *Simpkins*, No. 3:17-cv-7-J-34JRK, Doc. 3. The Court dismissed the complaint without prejudice

to refiling it on the proper form with sufficient factual allegations. *Simpkins*, No. 3:17-cv-7-J-34JRK, Doc. 3.[1]

## II.     Current Complaint

In an apparent attempt to comply with previous orders, Simpkins has filed a new 53-page complaint naming 75 defendants (providing only a last name for many)[2] and containing 138 lengthy paragraphs of facts. *See* Doc. 1.

---

[1]The summary of Simpkins's earlier cases does not include any state-court case he may have filed.

[2]Simpkins names as defendants Dian Andrews (a warden), John Doe Rossiter (an assistant warden), John Doe Landrum (a warden), Michael J. Hale (a supervisor/sergeant at Suwannee Correctional Institution), Robert J. Croft (a supervisor/sergeant at Suwannee), Kevin E. Sievers (a supervisor/sergeant at Suwannee), John Doe Shute (a correctional officer at Suwannee), John Doe Skeen (a correctional officer at Suwannee), John Doe Barckar (a correctional officer at Suwannee), John Doe Grand (a correctional officer at Suwannee), John Doe Sapp (a supervisor/sergeant at Suwannee), John Doe Cox (a supervisor/sergeant at Florida State Prison ("FSP")), Kyle Knight (a supervisor/sergeant at FSP), Christopher Holland (a correctional officer at FSP), Bobbi Pollard (a correctional officer at FSP), Jochua Hodges (a correctional officer at FSP), Bradley McKimey (a correctional officer at FSP), Keith Musselman (a lieutenant at FSP), Prilie McGinnis (a supervisor at FSP), Steve P. Espitio (a lieutenant at Union Correctional Institution), Michael Brown (a lieutenant at Union), Calton Lee (a lieutenant at Union), John Doe Robinson (a lieutenant at Union), John Doe Chestnut (a lieutenant at Union), John Doe Wedd (a lieutenant at Union), John Doe Hood (a lieutenant at Union), John Doe Shullet (a supervisor/sergeant at Union), Jared Cox (a lieutenant at Union), Rick E. Robinson (a supervisor/sergeant at Union), Millard L. Bell (a supervisor/sergeant at Union), Brandon Korey (a supervisor/sergeant at Union), John Doe Strong (a lieutenant at Union), Casey L. Clan (a lieutenant at Union), John Doe White (a correctional officer at Union), John Doe Gilbert (a correctional officer at Union), John Doe Canadian (a supervisor/sergeant at Union), John Doe Carter (a correctional officer at Union), John Doe Green (a correctional officer at Union), John Doe Bass (a supervisor at Union), John Doe Wilkerson (a correctional officer at Union), John Doe Anderson (a correctional officer at Union), John Doe Gracey (a correctional officer at Union), John Doe Coe (a correctional officer at Union), John Doe Nyh (a correctional officer at Union), John Doe Griffins (a correctional officer at Union), John Doe Hines (a correctional officer at Union), John Doe Bailey (a correctional officer at Union), John Doe Tyson (a correctional officer at Union), John Doe Rhoden (a correctional officer at Union), John Doe Beduskwie (a correctional officer at Union), John Doe Kandie (a correctional officer at Union), John Doe Williams (a correctional officer at Union), John Doe Brown (a

4

The complaint is extensive, confusing, and contains allegations about events between March 2012 and January 2017 at Cross City Correctional Institution, Suwanee Correctional Institution, Florida State Prison, and Union Correctional Institution. *See* Doc. 1. Simpkins asserts he is mentally disabled and generally alleges the defendants served or allowed inmates to serve him meals poisoned or contaminated with chemicals and bodily fluids, used excessive force against him, ignored his medical complaints, wrote "bogus" disciplinary reports, mocked him, threatened him, and tried to kill him, all because they are angry at or jealous of his brother, a professional football player. *See generally* Doc. 1.

The bulk of the complaint is devoted to describing prison officials' efforts to poison him through his meals and the symptoms he experienced after eating food, including prepackaged religious meals and food from the canteen. *See, e.g.* Doc. 1 ¶¶ 8 ("management meal" caused tingling of the legs and feet, vomiting until he bled, cold sweats, and foaming at the mouth), 20 (officer served him grits with spit in them), 24 (officials tried to get other inmates to poison his meals), 38 (he felt "unusual symptoms"—dry eyes, vomiting, "tangling of the feet," and cold sweats—after eating meals), 46 (contaminated meal made him pass out, and a nurse stated someone "got off" on his meals), 48 (officials allowed other inmates to serve him contaminated meals in an attempt to cause internal bleeding or bone cancer), 50 (shift supervisors served him contaminated meals and bragged to other inmates that they were trying

---

correctional officer at Union), John Doe Osborn (a correctional officer at Union), John Doe Jenkins (a correctional officer at Union), John Doe Hallbrook (a correctional officer at Union), Justin Murdoff (a supervisor/sergeant at Union), John Doe Woods (a correctional officer at Union), John Doe Johnson (a supervisor/sergeant at FSP), John Doe Synches (a correctional officer at Union), John Doe Gradly (a correctional officer at FSP), Steven Dea (a correctional officer at FSP), J. Sluminkski (a nurse at FSP), John Doe Taylor (a nurse at Union), John Doe Woods (a nurse at Union), John Doe Harden (a nurse at Union), John Doe Harvey (a nurse at Union), John Doe Cordeau (a correctional officer at Union), John Doe Wiggs (a correctional officer at Union), John Doe Walton (a correctional officer at Union), John Doe Melton (a correctional officer at Union), John Doe Hall (a correctional officer at Union), John Doe Madison (a correctional officer at Union), and John Doe Bealeau (a correctional officer at Union).

to cause bone cancer and internal bleeding), 73 (officers allowed other inmates to serve him religious meals that made him sick), 74 (a sergeant served him canteen food products and toothpaste that made him sick), 97 (prepackaged religious meals were contaminated and caused symptoms), 106 (same), 133 (he received "torturous meals" from officials or other inmates). He also describes hearing voices discussing the scheme to harm him. *See, e.g.*, Doc. 1 ¶¶ 3 (voices said officers tried to put a hit out on him and get him raped), 28–29 (voices said officers tried to put a hit out on him because his brother was going to a bowl game), 64 (inmates said officials tried to cause constipation to break down his digestive system, dry eyes to prevent him from seeing his brother, leg swelling to amputate his legs, colon pain to cause colon cancer, chest pain to cause lung bleeding, and anemia to heat his rotting organs and cause bone cancer), 104 (voices said officials were trying to harm him and put bodily fluids in his food), 135 (voices said officers were going to put a hit out on him).

Mixed with complaints about tainted food are allegations of other incidents, including officials using excessive, "unlawful," or "unorganized" force against him, *see, e.g.,* Doc. 1 ¶¶ 11–12 (after an "accidental tug of war cuff snatching" in which an officer received a "light cut," other officers retaliated against him by using "unorganized" force and spraying him with an "unauthorized chemical"), 49 (officers came into his cell when they should not have, he tried to run out of his cell, and one of the officers put him in a headlock and hit his ear), 67 (officers sprayed him with pepper spray after he made a sick call request), 87 (after he popped a sprinkler in his cell and put a sheet around his neck as if to hang himself, a sergeant tried to get him to come out of his cell without using the proper procedure, got inmates to line the door with bean bags to keep the water in his cell, choked him while he was lying on the floor, and antagonized him about his brother), 91 (out of fear, he refused to comply with directives for handcuffs, and unknown officers got on top of him while wearing armor and shields, ground his flesh, and choked him), 111–12 (a nurse injected him with a needle and used too much pressure, causing bleeding; inmates said officials gave him HIV or AIDS with a dirty needle); unsatisfactory cell conditions, *see, e.g.* Doc. 1 ¶¶ 58 (cell had no air conditioning and only hot drinking water from the sink),

6

65–66 (an officer ignored his complaints about a toilet that had overflowed, and he was left in the flooded cell for three to four days), 106 (cell had a vent stuffed with toothpaste, no cold water, and dirty walls); and "bogus" disciplinary reports, *see, e.g.* Doc. 1 ¶¶ 75 (a lieutenant pepper sprayed him after he "popped" a sprinkler in his cell, and another lieutenant wrote a "bogus" disciplinary report against him for using a mat to block the pepper spray), 80 (after he complained that his meals were contaminated and he had received no pancakes, a sergeant moved him to another cell and used excessive force on him, and another officer wrote a "bogus disciplinary report" against him), 100 (officials wrote "bogus" disciplinary reports against him), 123 (officials wrote disciplinary reports against him to prevent him from seeing his brother).

Simpkins also makes other miscellaneous allegations, like he experienced problems from medications, *see* Doc. 1 ¶¶ 47 (seizure medication gave him a burning and draining feeling in his chest), 79 (antibiotics slowed down his immune system), 95 (pain medication caused kidney pain and slowed his immune system, so he refused to take it), 121 (he received "contaminated" or "illegal" dosages of his medications), a sergeant put a frog in his cell, Doc. 1 ¶ 5, and officials subjected him to cruel and unusual punishment by issuing him "soft green trays," Doc. 1 ¶ 16. He contends prison employees have indicated they are willing to serve as witnesses (some by signaling to him from the parking lot through the window of his cell) and have been blackmailed or intimidated. *See, e.g.* Doc. 1 ¶¶ 25 (officer "acknowledged" she would be a witness), 28 (lieutenant signaled that she would be a witness), 78 (officer stated she knew "they" were trying to kill Simpkins and would be a witness), 104 (officials tampered with or blackmailed nurses who were potential witnesses), 126–28 (officials have signaled from the parking lot that they will be witnesses, but they are afraid of blackmailing and intimidation).

Simpkins alleges he has complained, filed grievances, and submitted medical requests to no avail. *See, e.g.* Doc. 1 at 48[3] & ¶¶ 30, 92, 99, 121.

Under "Statement of Claim," Simpkins writes,

> CRUEL AND UNUSUAL PUNISHMENT. POLICY'S VIOLATION WHERE NUMEROUS OF OFFICIALS OF THE DEPARTMENT OF CORRECTION WANTONLY PUT PLAINTIFF IN EXCESSIVE RISK WITH BODILY HARM FROM THEIR HANDS AND HANDS OF OTHER INMATES BY ISSUING/PREPARING PARTICULAR PLAINTIFF POISON/CONTAMINATED MEALS WHILE TORTURING PLAINTIFF WITH UNORGANIZED EXCESSIVE, UNNECESSARY, UNLAWFUL, USE OF FORCES, AND PSYCHOLOGICAL TORTURE PREJUDICING PLAINTIFF AS PLAINTIFF'S FORMER GATOR BROTHER WAS ANTICIPATED/PROSPECTED TO THE N.F.L.

Doc. 1 at 7.

In a paragraph titled "Legal Claim," Simpkins writes,

> Of the Excessive Risk it violated various of policy's of Chapter 33, indifference of my medical needs, institution meals and religion. And my right to be [protected] from the hands of fellow inmates, and protected from the hands of fellow inmates protected from bodily harm or violence. As it's prisons officials duty, U.S.C.A. Const. Amend. 8. I, Leonardo Simpkins, was violated of my rights which constituted Cruel and Unusual Punishment, and Due Process violation 8th Amendment and 14th Amendment to the United States Constitution.

Doc. 1 at 49 (errors in original).

Simpkins requests a jury trial, punitive damages, compensatory damages of $20,000 to $50,000 from each defendant, "a settlement if found guilty of part of case," assistance of counsel, and that the defendants "be punished." Doc. 1 at 51.

---

[3] Where the original document page numbers differ from the CM/ECF page numbers, this report and recommendation cites the CM/ECF page numbers.

Attached to the complaint is a copy of *Longoria v. Texas*, 473 F.3d 586 (5th Cir. 2006), which Simpkins states is "case law on official[']s duty to protect." Doc. 1 at 51, note; Doc. 1-1.

### III. Law & Analysis

#### A. *Motion to Proceed In Forma Pauperis*

With his complaint, Simpkins filed a motion to proceed IFP. Doc. 3. He states his brother puts $50 in his account each month, he receives an unspecified amount of public assistance, and he cannot pay the costs of this proceeding. *See* Doc. 3.

Under 28 U.S.C. § 1915(a)(1), a court may authorize the commencement of a case without prepayment of fees or costs "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor." The prisoner "shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2).

The information in the motion is insufficient to determine if Simpkins qualifies to proceed IFP. He does not indicate how much public assistance he receives or how much money is in his account, and he did not submit a certified copy of his trust fund account statement or its equivalent.

Even if Simpkins qualifies to proceed IFP, the court must screen the complaint to determine if it may proceed. A court "shall" dismiss a case brought by a plaintiff proceeding IFP if the complaint is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)–(iii). Section 1915A imposes a similar screening requirement for certain cases filed by prisoners:

> **(a) Screening.**—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a

civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

**(b) Grounds for dismissal.**—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint--

**(1)** is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

**(2)** seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b)(i)–(ii).

"Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). A court must liberally construe a pleading filed by an unrepresented litigant. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Although a court must treat a pro se pleading leniently, the court cannot rewrite a deficient pleading for a party or otherwise serve as his de facto counsel. *GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

1. *Frivolity*

"A claim is frivolous if it is without arguable merit either in law or fact." *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001). "[F]rivolous claims include claims describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar." *Id.* (internal quotation marks omitted); *see Gladney v. Pendleton Corr. Facility*, 302 F.3d 773, 774–75 (7th Cir. 2002) (affirming dismissal of complaint as frivolous under § 1915A(b) where plaintiff alleged guards at three different prisons unlocked his cell door while he was asleep and allowed other inmates to drug and sexually assault him while he slept, and medical personnel claimed not to see a needle mark under his lip because they were trying to make him think he was delusional).

10

A complaint that fails to state a claim under Federal Rule of Civil Procedure 12(b)(6) is not automatically frivolous. *Neitzke v. Williams*, 490 U.S. 319, 331 (1989). A court may dismiss a claim as frivolous when the legal theories are "indisputably meritless," the "factual contentions are clearly baseless," *id.* at 327, or it appears a plaintiff has little or no chance of success, *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993). A complaint dismissed as frivolous normally cannot be refiled. *Gladney*, 302 F.3d at 775.

Simpkins's claims that multiple prison officials at multiple facilities subjected him to cruel and unusual punishment by poisoning or contaminating his food for five years because of animosity, jealousy, or resentment toward him or his brother because his brother is a professional football player describe a fantastic or delusional scenario.[4] I recommend dismissing them as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).[5]

---

[4] Prison officials have a duty under the Eighth Amendment to "provide humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Simpkins's allegations are delusional or fantastic because of the number of defendants, length of time, number of locations, and asserted rationale for the alleged poisoning.

[5] Federal Rule of Civil Procedure 17(c)(2) requires a court to appoint a guardian ad litem or issue "another appropriate order" to protect an incompetent person who is unrepresented in an action. A court may abuse its discretion if, presented with evidence from a court, mental health professional, or public agency indicating incompetency, it fails to consider Rule 17(c)(2). *Powell v. Symons*, 680 F.3d 301, 307 (3d Cir. 2012); *Ferrelli v. River Manor Health Care Ctr.*, 323 F.3d 196, 201 (2d Cir. 2003). If a plaintiff is incompetent and unrepresented, the court may not dismiss his claims on the merits. *Berrios v. N.Y. City Hous. Auth.*, 564 F.3d 130, 134 (2d Cir. 2009).

"A court is not required to conduct a *sua sponte* determination whether an unrepresented litigant is incompetent unless there is some verifiable evidence of incompetence." *Powell*, 680 F.3d at 307. "[S]tanding alone … a litigant's bizarre behavior is insufficient to trigger a mandatory inquiry into his ... competency." *Ferrelli*, 323 F.3d at 202. A court need not "attempt to distinguish between the truly incompetent and those who—because of a personality disorder or other cause—behave in a foolish or bizarre way, hold irrational beliefs, or are simply inept." *Id.* at 203; *see McLean v. GMAC Mortg. Corp.*, 398 F. App'x 467, 470 (11th Cir. 2010) (court did not err by failing to sua sponte appoint guardian ad litem where party requested continuances to allow recovery from psychological stress; "psychological and mental stress is not the equivalent of

11

*2.    Failure to State a Claim*

To determine if a complaint fails to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii) or § 1915A(b)(1), the court must apply the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997) (§ 1915(e)(2)(B)(ii)); *Pugh v. Smith*, 333 F. App'x 478, 479 (11th Cir. 2009) (§ 1915A(b)(1)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Labels and conclusions" do not suffice. *Id.*

Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 10(b) requires a party to state claims in numbered paragraphs, "each limited as far as practicable to a single set of circumstances," and, "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence … must be stated in a separate count."

"Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). Shotgun pleadings "unnecessarily tax the time and resources" of courts. *Keith v. DeKalb Cty., Ga.*, 749 F.3d 1034, 1045 n.39 (11th Cir. 2014). The Eleventh Circuit Court of Appeals has "roundly, repeatedly, and consistently" condemned shotgun pleadings. *Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1126 (11th Cir. 2014).

---

incompetence to proceed in court"); *Hudnall v. Sellner*, 800 F.2d 377, 384 (4th Cir. 1986) ("[T]here is of course no necessary relationship between 'mental incompetence' [under Rule 17(c)] and various forms of mental derangement or personality disorder that may cause utterly bizarre and destructive conduct in litigation as in other realms.").

Here, the Court need not sua sponte inquire as to Simpkins's competency or refrain from dismissing his claims on the merits due to his alleged mental disability. Though he claims to have a mental disability and his pleading contains delusional or fantastic allegations, the record contains no verifiable evidence of legal incompetence.

12

Recognizing use of the label "shotgun pleading" may be imprecise, the Eleventh Circuit "identified four rough types or categories of shotgun pleadings." *Weiland*, 792 F.3d at 1321. "The most common type … is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* The second type is one that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1322. The third type fails to "separat[e] into a different count each cause of action or claim for relief." *Id.* at 1323. The fourth type "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1323. "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.*

A dismissal for failure to comply with Rules 8(a)(2) and 10(b) is appropriate under the court's "inherent authority to control its docket and ensure prompt resolution of lawsuits." *Weiland*, 792 F.3d at 1320. The Eleventh Circuit has affirmed dismissal where the complaint did not comply with the pleading requirements. *See LaCroix v. W. Dist. of Ky.*, 627 F. App'x 816, 818–19 & n.1 (11th Cir. 2015) (affirming dismissal under § 1915(e)(2)(B)(ii); pro se complaint was "189 pages long, contain[ed] 763 numbered paragraphs, and was filed with a 179–page appendix"; "consist[ed] of factual allegations that [were] not specifically tied to any of the 69 enumerated causes of action"; and alleged "69 causes of action … against the defendants collectively, making it impossible to identify which particular defendant engaged in what allegedly wrongful conduct"); *Osahar v. U.S. Postal Serv.*, 297 F. App'x 863, 864 (11th Cir. 2008) (affirming dismissal for failure to state a claim under Rule 12(b)(6); complaint was not short and plain, was a 62-page shotgun pleading "replete with factual allegations and rambling legal conclusions," and otherwise failed to state a claim; previous five attempts to amend complaint were unsuccessful). Dismissal

under Rule 12(b)(6) is warranted if the allegations fail to state a claim upon which relief can be granted; dismissal under Rule 8(a)(2) or Rule 10(b) is warranted if "it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief." *Weiland*, 792 F.3d at 1325 (emphasis in original; internal quotation marks omitted).

A dismissal under § 1915A is generally with prejudice unless the order states otherwise. *See Duff v. Steub*, 378 F. App'x 868, 869–70 (11th Cir. 2010) (dismissal under § 1915A was with prejudice because it did not state otherwise). An order that effectively precludes a plaintiff from refiling a claim due to the running of a statute of limitations is "tantamount to a dismissal with prejudice." *Justice v. United States*, 6 F.3d 1474, 1482 n.15 (11th Cir. 1993).

A four-year statute of limitations applies to claims under 42 U.S.C. § 1983 arising in Florida. *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003). If it "appears that a pro se plaintiff's complaint, if more carefully drafted, might state a claim, the district court should give the pro se plaintiff an opportunity to amend his complaint" instead of dismissing it with prejudice. *Jemison v. Mitchell*, 380 F. App'x 904, 907 (11th Cir. 2010).

No opportunity to amend is necessary if a plaintiff indicates he does not wish to amend or if a more carefully drafted complaint could not state a claim. *Bank v. Pitt,* 928 F.2d 1108, 1112 (11th Cir. 1991) *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.,* 314 F.3d 541, 542 (11th Cir. 2002) (en banc); *see also LaCroix*, 627 F. App'x at 818–19 & n.1 (district court did not err in dismissing shotgun complaint without providing leave to amend because amendment would have been futile); *Howard v. Memnon*, 572 F. App'x 692, 696–97 (11th Cir. 2014) (district court did not abuse discretion in dismissing frivolous claims where no facts supported constitutional violation, and amendment would be futile because record reflected claims were clearly without merit and there was no indication a more carefully drafted pleading might state a claim).

Simpkins's complaint, Doc. 1, violates Rules 8(a) and 10(b) and is an impermissible shotgun pleading. Setting aside the fantastic or delusional allegations of poisoned food, many of the alleged facts are conclusory, vague, and immaterial; different causes of action or claims for relief are not separated into different counts; and multiple claims are asserted against multiple defendants without specifying to which defendants each claim applies. The complaint consists of a diary-like account of incidents spanning five years and involving numerous defendants. The pleading defects make it difficult to determine to what extent any claim relies on facts unrelated to the allegation of poisoned food and virtually impossible to determine which facts support which claims against which defendants. Despite the complaint's length, Simpkins does not allege facts that state a claim to relief that is plausible on its face.[6]

---

[6]The case attached to the complaint, *Longoria v. Texas*, does not make the allegations any clearer. There, a prisoner brought claims for failure to protect and state-created danger against prison officials for their conduct connected to an incident where he was stabbed by fellow inmates. *Longoria*, 473 F.3d at 590–92. The Fifth Circuit explained the law this way:

> It is well established that prison officials have a constitutional duty to protect prisoners from violence at the hands of their fellow inmates. *See Farmer v. Brennan,* 511 U.S. 825, 832–33, 114 S.Ct. 1970, 1976–77, 128 L.Ed.2d 811 (1994). Under *Farmer,* an inmate "must show that he is incarcerated under conditions posing a substantial risk of serious harm" and that prison officials were deliberately indifferent to an inmate's safety. *Id.* at 834, 114 S.Ct. at 1977. An official acts with the requisite deliberate indifference if he is aware of an "excessive risk to inmate ... safety" and disregards that risk. *Id.* at 837, 114 S.Ct. at 1979. In this context, an officer's awareness of the risk is evaluated subjectively. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and must in fact also have drawn the inference. *Id.* No liability exists, however, if an official reasonably responded to a known substantial risk, "even if the harm was ultimately not averted." *Id.* at 844, 114 S.Ct. at 1983.

*Longoria*, 473 F.3d at 592–93 (internal footnote omitted).

Other than the allegation that prison officials allowed inmates to serve Simpkins poisoned or contaminated food as part of a scheme to harm him out of jealousy, anger, or animosity because of his brother's profession, it is unclear what harm any inmate inflicted.

Some incidents about which Simpkins complains occurred more than four years ago, and any dismissal would effectively be with prejudice as to any § 1983 claim based on them. But given that many of Simpkins's allegations are frivolous, many others are not specifically tied to any particular cause of action, all causes of action are alleged against all defendants collectively, and this is Simpkins's fifth unsuccessful attempt to assert essentially the same claims in federal court, amendment would be futile.

As the Court had done in previous actions by Simpkins that suffered from similar deficiencies, *see* Nos. 3:14-cv-459-J-34PDB, 3:15-cv-1534-J-34JRK, 3:17-cv-7-J-34JRK, I recommend dismissing the remainder of the complaint without prejudice to refiling a pleading that complies with those requirements.[7]

---

[7]There are other problems with Simpkins's complaint.

Under 42 U.S.C. §1983, a plaintiff must show a "person acting under color of state law" deprived him of a federal right. *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001).

A supervisor cannot be held liable under § 1983 under respondeat superior or vicarious liability. *Danley v. Allen*, 540 F.3d 1298, 1314 (11th Cir. 2008), *abrogated on other grounds as recognized in Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010). For supervisory liability, the supervisor must personally participate in the alleged constitutional violation or there must be a causal connection between the supervising official's actions and the constitutional deprivation. *Id.* A plaintiff may show a causal connection by showing a history of widespread abuse that would put a reasonable supervisor on notice of the need to correct the alleged deprivation, facts to support an inference that the supervisor directed subordinates to act unlawfully or knew they would and failed to stop them, or that the supervisor's custom or policy resulted in deliberate indifference to constitutional rights. *Id.* To the extent Simpkins alleges any prison official is liable based on respondeat superior or vicarious liability alone, those claims fail.

Lack of due care or negligence by prison officials does not trigger due process protections. *Davidson v. Cannon*, 474 U.S. 344, 347–48 (1986). To the extent Simpkins bases his due process claims on prison officials' negligent acts, those claims fail.

Intentionally depriving a prisoner of his property does not violate due process if the state provides a meaningful post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Under Florida law, a prisoner can sue officers for conversion of personal property. *Jackson v. Hill*, 569 F. App'x 697, 698 (11th Cir. 2014). Any claim that prison officials violated Simpkins's due process rights by taking his property fails.

### B.     *Motions to Amend*

Simpkins has filed two motions requesting leave to amend his complaint to add facts, witnesses, new parties, and claims for punitive damages for "the wanton motive prejudice of plaintiff being a victim to cruel and unusual punishment … because his N.F.L. brother was anticipated from the Gator's to the N.F.L." Docs. 5, 6.

Under Federal Rule of Civil Procedure 15(a)(2), a court must freely grant leave to amend a pleading if justice so requires:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared

---

Under the Eighth Amendment, prison officials must provide prisoners with "humane conditions of confinement." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994). Restrictive or harsh conditions do not violate the constitution; "prison conditions rise to the level of an Eighth Amendment violation only when they involve the wanton and unnecessary infliction of pain." *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (internal quotation marks omitted). A prisoner must satisfy an objective component (at a minimum, that a condition of confinement "poses an unreasonable risk of serious damage to his future health or safety") and a subjective component (that a prison official acted with deliberate indifference: he knew of and disregarded an "excessive risk to inmate health or safety"). *Id.* at 1289–90. "[O]nly those conditions which objectively amount to an extreme deprivation violating contemporary standards of decency are subject to Eighth Amendment scrutiny." *Thomas v. Bryant*, 614 F.3d 1288, 1306 (11th Cir. 2010) (internal quotation marks omitted). Simpkins has not alleged facts to show the conditions of his cells caused an extreme deprivation or presented an unreasonable risk of serious damage, or that officials acted with deliberate indifference to an unreasonable risk. Any claim that the conditions of his cells violated his constitutional rights fails.

To state an Eighth Amendment claim for excessive force, a prisoner must show a prison official "applied force maliciously and sadistically for the very purpose of causing harm." *Thomas*, 614 F.3d at 1304. The inquiry turns on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 6 (1992). Other than frivolous allegations of jealousy, anger, or animosity because of his brother's profession, Simpkins alleges no facts sufficient to show the officers' use of force met the standard. Any claim of excessive force fails.

Threatening language and gestures are not constitutional violations. *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983). To the extent Simpkins claims prison officials violated his rights by threatening him, those claims fail.

reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962).

For the reasons discussed, amendment would be futile. The grounds asserted in Simpkins's motions to amend would not fix the complaint's defects; instead, they would add more defendants and more claims and compound the confusion. Amendment is unwarranted.

### C. *Motion for Appointment of Counsel*

Simpkins asks the Court to appoint counsel to represent him. Doc. 2. He explains he is mentally disabled, the case involves many defendants, blackmailing and witness tampering have occurred, another lawyer is helping him challenge his criminal conviction, and he has drafted his complaint to the best of his knowledge. Doc. 2.

Under 28 U.S.C. § 1915(e)(1), a court may request a lawyer to represent a person who cannot afford one. But a plaintiff in a civil case does not have a constitutional right to a lawyer, and courts have broad discretion in deciding whether to appoint counsel. *Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999). A court should appoint a lawyer in a civil case only in "exceptional circumstances." *Id.*

In determining whether to appoint a lawyer, a court may consider the merits of the claim, *Poole v. Lambert*, 819 F.2d 1025, 1028 (11th Cir. 1987), as well as the type and complexity of the case, whether the plaintiff can adequately investigate and present his case, and whether the case will require skill in presenting evidence and in cross-examination, *Ulmer v. Chancellor*, 691 F.2d 209, 213 (5th Cir. 1982) (cited with approval in *Smith v. Fla. Dep't of Corr.*, 713 F.3d 1059, 1065 n.11 (11th Cir. 2013)). Even if a court finds that the circumstances warrant appointment of counsel, the court may only request that an attorney represent an indigent party in a civil

case; the court cannot require the attorney to take the case. *Mallard v. U.S. Dist. Ct. for S. Dist. Of Iowa*, 490 U.S. 296, 301–02 (1989).

A court may abuse its discretion if it dismisses a plaintiff's complaint without ruling on his motion for appointment of counsel. *Childress v. Walker*, 787 F.3d 433, 443 (7th Cir. 2015).

Here, Simpkins faces difficulties: he is in prison, he claims to suffer a mental disability, and the case involves numerous defendants and events spanning several years. From this and his other cases in this Court, it appears he has struggled to present his case. *See Simpkins*, Nos. 3:14-cv-459, 3:14-cv-1470, 3:15-cv-1534, 3:17-cv-7. But, even assuming he cannot afford counsel, he has not shown the case has merit. Much of the complaint is devoted to frivolous allegations that officials poisoned his food (including prepackaged food) because of jealousy, resentment, or animosity because his brother is a professional football player, and the rest is an impermissible shotgun pleading that does not comply with the pleading requirements of the Federal Rules of Civil Procedure, making it impossible to tell which facts support which claims and which claims are against which defendants. As explained above, amendment would be futile.

Given that the case appears meritless and Simpkins has not shown extraordinary circumstances, appointment of counsel is unwarranted.

## IV.   Recommendation

I recommend:

1.   **dismissing** the complaint, Doc. 1, as frivolous to the extent Simpkins claims the defendants poisoned or contaminated his food, and without prejudice to filing a new complaint that complies with the pleading requirements as to any other claims;

2.   **denying** Simpkins's motion for leave to proceed IFP, Doc. 3;

3.   **denying** Simpkins's motions to amend, Docs. 5, 6;

4. **denying** Simpkins's motion for appointment of counsel, Doc. 2; and

5. **directing** the clerk to close the case.[8]

**Entered** in Jacksonville, Florida, on August 9, 2017.

*PATRICIA D. BARKSDALE*
*United States Magistrate Judge*

c: The Honorable Marcia Morales Howard

Leonardo Simpkins
U36009
Florida State Prison
P.O. Box 800
Raiford, Florida 32083

---

[8]"Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

20